UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| YASH TECHNOLOGIES, INC.,<br>an Illinois corporation<br><br>      Plaintiff,<br><br>v.<br><br>PROSPEED TRADING, INC.,<br>a California corporation,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)    NO.   07-4054<br>)<br>)<br>)<br>)<br>)<br>) |

**RESPONSE TO MOTION TO REMAND**

Now comes the Defendant herein by its attorney, Philip E. Koenig and for its response to Motion

for Remand states:

**Introduction.**  Plaintiff has filed a response to removal requesting remand.  He asserts that

removal was not timely because service of the complaint took place more than 30 days prior to the date

on which petition for removal was filed.  He further asserts that there is no proof that the amount in

question exceeds $75,000.  By this memorandum, Defendant will prove that service on a Secretary of

State or other statutory agent does not begin the thirty-day period by which Removal must be sought.

Further, Defendant will prove by the requisite standard that the jurisdictional amount in controversy has

been met and thereby removal is proper.

**Timely Removal.**  Plaintiff asserts that service was effected on Defendant by service on the

Secretary of State of the State of California on August 7, 2007.  This position is incorrect; the time for

removal where service is made on a statutory agent runs from receipt of the pleading by the Defendant

and not a statutory agent. See *Rowland v. Gift Certificates.com, Inc. 195 F. Supp 2d 509,512 (2002,

US DC S. Dist. N.Y.)* See to the same effect, *Medina v. Walmart Stores, Inc.  945 F. Supp 519, 520

(Dist Ct W Dist. N.Y. 1996)* where in response and denial of a motion to remand, stated, "The heavy

weight of authority is to the effect that the time for removal in cases in which service is made on a statutory agent runs from receipt of the pleading by the Defendant rather than by a statutory agent." There, *Walmart* sought to remove a case to federal court and filed its removal more than 30 days after service upon the Secretary of State, but fewer than 30 days following receipt of the complaint and summons by Walmart. The court emphasized, "...Defendant's right to a federal forum should not depend on the rapidity and accuracy with which the statutory agent informs its principal of the commencement of litigation against it." (P 521). Also see *Pfohl Brothers Landfill, 67 F Supp 2d 177 (US DC W Dist N.Y., 1999)* holding similarly.

In the case before this court, Plaintiff only recounts service of his complaint on the Secretary of State and provides no proof that the Defendant ever actually received the complaint and summons. Exhibit A, the statement of Asim Khawaja shows that the Defendant, Prospeed, did not become aware of any lawsuit until Plaintiff's counsel sent the attorney for his co-venturer the complaint after receiving service of suit brought in Connecticut by IT Source LLC, a joint venturer of Prospeed, seeking recovery of fees from Yash under the contract between Yash and Prospeed. Thus, Defendant, Prospeed, has never received any documents. Receipt of the documents by an attorney for a  non-party cannot constitute service on a party. The pertinent statute, 28 USC 1446(b), emphasizes that notice for removal shall be filed within 30 days after "receipt by the Defendant." There is no proof in the record that Defendant ever personally received the documents. This interpretation is entirely consistent with the holding of the U.S. Supreme Court in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc. 526 US 344, 119 S Ct 1322, 143 K Ed 2d 448 (1999)* where the court held that removal time is measured from the date of actual service of summons and not from the date on which the party seeking removal receives a courtesy copy of the lawsuit.

Consequently, removal was timely.

**Jurisdictional Amount.** Plaintiff further contends that nothing in the record proves that the requisite amount in controversy exists because the instant suit is a declaratory judgment action. Defendant has several bases for proof that the requisite amount in controversy exists.

As is required, Defendant asserted the basis for federal jurisdiction when he sought removal of the case. The Notice of Removal specifically sets forth the citizenship of the parties and that the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff offers no evidence or other proof that Defendant's allegation is incorrect, but merely states that the complaint and default judgment entered do not reflect any expression of money. Without any such proof, Defendant has carried its burden of proof by the uncontroverted allegation that the amount in controversy exceeds the requisite amount.

The Court can consider allegations contained in the Notice of Removal to determine whether the amount in controversy is jurisdictionally sufficient. *14C Wright and Miller, Fed. Prac. § Proc. Juris.3d § 3725*. Normally, the existence of a substantial federal question must be determined by the face of a Complaint, but where an artful pleader pleads a complaint in a manner that does not disclose the existence of a federal question, a Court may look to other matters in the record, particularly the Notice of Removal to determine federal jurisdiction. See *Oglesby v. RCA 752 F.2d 272, 277 (1985, Seventh Circuit)* and *Lingle v. Norge 823 F.2d 1031, 1040 (1987, Seventh Circuit)*.

*Oglesby* and *Lingle* were suits for retaliatory discharge cases that were pled as State Court claims which made no reference to collective bargaining agreements that affected the viability of the stated causes of action. Both courts responded to Motions for Remand stating that the artful pleading exception allows the Court to look beyond the face of the Complaint to determine jurisdiction issues.

Plaintiff, in the case at bar, filed suit in Illinois State Court seeking declaratory relief as to the narrow question of whether a signatory to a contract functioned without authority. No effort was made

3

to determine the extent of any indebtedness owed by one party to the other. In fact, the reason for filing Plaintiff's lawsuit was to preempt any effort on the part of Defendant and his joint venturer to recover money owed to them on the contract on which Plaintiff sought declaratory relief.

Attached as Exhibits B and C to this Memorandum are a copy of the Complaint filed in the U.S. District Court for Connecticut and a transcription of a copy of an email dated August 6, 2007 sent to Attorney Keepnews (who filed the Connecticut lawsuit) by Plaintiff's attorney wherein Plaintiff's attorney acknowledged receipt of the complaint filed in Connecticut. The complaint in the Connecticut suit alleges damages of not less than $200,000.[1] Obviously, as of August 6, 2007, Plaintiff was aware of the amount of money that Defendant and his co-venturer believed that plaintiff owed them. The suggestion made by Plaintiff that there is not an amount in controversy of at least $75,000 is curious, if not inexplicable.

The court's attention is directed to *International Gateway Communications, Inc.* v. *Communications Telesystems International, 922 F Supp 122 (USDC N Dist IL 1996),* a declaratory judgment action to determine whether entry into a contract was induced by fraud. Upholding removal after a Motion to Remand was filed, the court stated that the party invoking jurisdiction bears the burden of supporting its jurisdictional allegations "by competent proof" or proof to a reasonable probability that jurisdiction exists." (P 124).

The District Court held that a court could examine the record as a whole to determine whether the jurisdictional amount had been met and stated, "...where a plaintiff seeks injunctive or declaratory relief, it is well established that the amount in controversy is measured by the value of the object of the litigation...the court can measure the value of the relief requested from the perspective of either the

---

[1] Once the issue of removal is resolved, it is contemplated that entire dispute would be heard in the Central District of Illinois.

Plaintiff or Defendant" (p 125, citations omitted). The court went on to hold that the amount in controversy was clearly not zero.

This court should also disregard the statement of Plaintiff in this case that there is no monetary amount in question because the only relief sought is declaratory relief. Reference to the record that is uncontroverted by Plaintiff shows that Defendant made a statement under oath upon filing the Notice of Removal that the amount in controversy exceeded $75,000. Further, as was stated already, allied litigation has been initiated by Defendant's co-venturer based upon the contract where an amount far in excess of the $75,000 was requested. Consequently, Defendant has met his burden of proof. Remand should be denied.

Defendant has provided the very kind of proof that the Seventh Circuit held to be necessary for a proponent of federal jurisdiction to establish to sustain a finding that the jurisdictional amount in controversy has been met. Defendant offers his own statement in the form of an affidavit, the complaint filed by his co-venturer on the same contract and the Removal Notice asserting that damages are in excess of the requisite minimum.

These forms of proof are suitable "proof to a reasonable probability that jurisdiction exists," particularly because Plaintiff has not offered any contrary proof. See *Meridian Security Insurance v. Sadowski 441 F 3d 536, 541-2 (Seventh Circuit, 2006)*.

District Court decisions made after Meridian give great deference to information submitted by Defendants when seeking removal, particularly if such information is not controverted by the party resisting federal jurisdiction. Quoting the holding in *Meridian,* the District Court for Southern Illinois stated, ... "The Seventh Circuit expressly banished the 'reasonable probability' standard from its lexicon. Plaintiffs incorrectly cite this language as the prevailing legal standard. Instead the test to be applied is as follows. First, the Defendant must proffer facts which establish that the jurisdictional

amount exceeds $75,000. Second, once the moving party has met this burden, the sum claimed by the proponent of federal jurisdiction controls if the claim is apparently made in good faith. It must appear to be a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." See *Missouri Franchise Development v. McCord (USDC Southern District of Illinois, 2007) 2007 WL 1308808.* Defendant, in the case at bar, has offered proof of the requisite facts and Plaintiff has offered no contradictory evidence.

Similarly, in <u>*Epstein v. Target*</u> *(USDC Northern District of Illinois, 2007) 2007 WL 551 552,* the court found jurisdiction to exist where Defendant provided an affidavit stating that Plaintiff would not stipulate that damages were less than the jurisdictional amount and found there was an inference that the jurisdictional amount did exist where the Plaintiff would not stipulate that the amount in controversy was less than $75,000. Similarly, in the case of bar, Plaintiff makes no statement as to the amount in question. He only states that nothing in the record specifically so states. A similar inference should operate against Plaintiff in this case. He makes no statement as to damages because he knows the damages exceed the jurisdictional requisite.

Defendant has met its burden as to the amount in controversy to prove existence of federal jurisdiction.

**Conclusion:**

1)      Having not been personally served, prior to filing removal, Defendant's removal was timely.

2)      Based on the Defendant's Notice of Removal the complaint of Defendant's co-venturer and the statement of Asim Khawaja, Defendant has proven to the requisite standard that the jurisdictional amount in controversy has been met.

WHEREFORE, Plaintiff's Motion to Remand should be denied.

Respectfully submitted,


/s/   Philip E. Koenig
Philip E. Koenig,
Attorney for Defendant
Prospeed, Inc.


Philip E. Koenig
Konecky, Koenig, Kutsunis & Weng
Attorneys at Law
1515 4th Avenue
Rock Island, IL 61201
309-786-3313

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL COURT**
**ROCK ISLAND, ILLINOIS**

| | | |
|---|---|---|
| YASH TECHNOLOGIES, INC.,<br>an Illinois corporation | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO.   07 4054 |
| v. | ) | |
| | ) | |
| PROSPEED TRADING, INC., | ) | |
| a California corporation, | ) | |
| | ) | |
| Defendant. | | |

<u>**STATEMENT IN SUPPORT OF MEMORANDUM IN OPPOSITION**</u>
<u>**TO MOTION TO REMAND**</u>

Asim Khawaja under penalty of perjury states:

1)      I am the sole stockholder, president and registered agent for Prospeed Trading, Inc., the Defendant in the above-entitled cause.

2)      In Spring of 2007, I relocated my business to New York, New York from Corona, California.

3)      IT Source LLC, a limited liability company owned by Sush Trapathi and my company, Prospeed, work together to complete the obligations I agreed to undertake under the agreement with Yash Technologies, Inc., copy attached.

4)      I have never been personally served or personally received with a summons and complaint in a suit captioned Yash Technologies, Inc. v. Prospeed Trading, Inc. and filed in the 14th Judicial Circuit, Rock Island County, Illinois.  I learned that such action existed from my colleague, Ms. Trapathi sometime after August 6, 2007, when Ms. Trapathi's lawyer was sent a copy of



documents by the lawyer for Yash Technologies, Inc.

    5)    Neither Sush Trapathi nor I have been provided with accurate data from Yash Technologies such that we can state exactly how much money Yash owes my company and/or IT Source LLC. Based upon the knowledge we presently have, we believe that Yash Technologies, Inc. owes Prospeed not less than $200,000 for unpaid fees and perhaps as much as $300,000 under the contract attached.

/s/  Asim Khawaja

# AGREEMENT

This Joint agreement executed on this 3rd day of February 2006 between Yash Technologies, Inc. hereinafter referred to as ("Yash "), an Illinois based corporation located at 605-17th Avenue, East Moline, IL-61244 USA. and Prospeed Trading, Inc., hereinafter referred to as ("Prospeed"), a California corporation having its office at 2424 Sage Leaf Circle, Corona, CA 92882 USA, WITNESSETH AS FOLLOWS WHEREAS Yash and Prospeed desire to transact business with each other and consider it desirable to record the terms and conditions on which they will do so; NOW THIS AGREEMENT WITNESSETH AS FOLLOWS

### 1. Scope of Work

Prospeed will work as an independent Company for facilitating YASH getting business development projects in the domain in which YASH has expertise and its expert services providers/ partner companies. Any other specific activity that is mutually agreed upon in writing.

### 2. Confidentiality Requirements

"Confidentiality Information" means any information (including the whole or any part of phrase of any scientific of technical information, designs, flowcharts, computer programmer code, business know-how, business information and data), ideas,concepts and drawings for products and services, business strategy, business plans, YASH markets, identified market needs, product and services strategies of Prospeed that are of value and secret in that they are not generally known to the public.

Confidential information can be disclosed by the client or Prospeed or their affiliate to YASH in document or other tangible form bearing an appropriate legend indicating it's confidential or proprietary nature.

Further, confidential information may be initially be disclosed orally or visually. If so, it shall be identified as confidential at the time of disclosure and a written summary thereof, also marked with a legend indicating it's confidential or proprietary nature, shall be provided to YASH within thirty (30) days of the initial disclosure.

Without prejudice to the foregoing it is agreed that it is not marked confidential but by nature thereof is obviously information of a confidential nature, will be deemed confidential information as per the terms of this Agreement and will be treated likewise.

### 3. Use of Confidential Information

YASH May use the confidential information of the client or Prospeed only for the purpose of this Agreement, and shall protect such confidential information from disclosure to others, using the same degree of care used to protect it's own proprietary information of like importance, but in any case no less than a reasonable degree of care.
YASH may disclose confidential information received only to its employees and Company who need to know for such purpose and who are bound by signed, written agreements to protect the received Confidential Agreement from unauthorized use and disclosure.

YASH may only disclose Confidential Information to third parties with prior written consent of Client and/or Prospeed.

### 4. Exceptions

The restrictions of this agreement on use and disclosure of Confidential Information shall not apply to information that :
a.was known at the time of it's disclosure to YASH under this agreement.
b.Is, or becomes publicly know, through no wrongful act of Prospeed
c.Is, received by YASH from a third party free to disclose it without obligation to the third party/Client.
d.Is independently developed by YASH without reference to Confidential Information.

5. **Agreement not to Compete.** Both YASH and Prospeed agree that during the length of this agreement and for a period of 2 years after termination: Neither shall, except upon obtaining prior written consent, hire or offer to hire, accept employment from, form any partnership or joint venture with, act as a fellow shareholder in a corporation with, or otherwise directly or indirectly enter into any business venture with any other person who are employed by YASH or Prospeed or company that they are introduced to by the other. Nor shall YASH or Prospeed begin or in anyway enter into a competing business with the other. Prospeed cannot engage in services provided by Prospeed.

6. **Ownership of the Work Product**
Prospeed will not own the product, services, drawings, source code or any other intellectual property. The ownership of the above forementioned and all documentation etc. agreed upon before commencement of the project will be handed over to the client under the terms and conditions agreed with the client, and will remain solely with YASH and the Client for whom YASH executed the project on behalf of Prospeed

7. **Legally Required Disclosure**
In the event YASH is required by law, regulation or court order to disclose any of the Client/ Prospeed information, YASH will, if at all possible immediately notify the Client/Prospeed in writing prior to making any such disclosure in order to facilitate Client/Prospeed seeking a protective order or other appropriate remedy from the appropriate body.

8. **Termination of Agreement**
This Agreement can be amended or in any manner modified or terminated only in a written agreement signed by both parties.

9. **Payment Method**
YASH Agrees to pay Prospeed service charges as outlined in the Appendix.

10. **Mode of Payment**
The payment shall be made in favor of Prospeed in the form of Checks, Demand Draft, or Wire Transfers to a designated bank account. The payment shall be made monthly, and immediately upon receipt of payment from the Client. YASH will invoice the Client directly and a copy of such invoice will be sent by YASH to Prospeed.

11. **General**
All obligations hereunder, including without limitation any and all obligations regarding the use and disclosure of Confidential Information, shall continue perpetually. This agreement can be amended or in any manner modified only in written agreement signed by both parties. Each party agrees that it will not, without prior consent of the other, disclose the existence and nature of this agreement and/or any negotiations of transactions related hereto.

This Agreement shall be governed by and construed in accordance with the laws of California, USA, wherein it is made and delivered.

For YASH Technologies, Inc.

Vinod K Samanthula
General Manager · Sales & Mktg.

Date  9th Feb 2006.

For Prospeed Trading, Inc.

Asim Khawaja - CEO

24 - Feb 2006

Date

## APPENDIX

Prospeed _____

Project Reference Number    ___2006001_____

Prospect/Client Name  __Chemtura Corporation_____

| Description of Services | Service Charges |
|---|---|
| Any and all offshore services that are invoiced to Chemtura. | $5.00/ man hour |
| Any and all onsite invoiced services that are invoiced to Chemtura. | $5.00/ man hour |

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IT SOURCE, LLC                          :      CIVIL ACTION NO:
      Plaintiff                       :
                                 :      **3 0 7 C V 0 1 1 4 0 P CD**
                                 :
vs.                                     :      JURY TRIAL DEMANDED
                                 :
YASH TECHNOLOGIES, INC.                 :      JULY 24, 2007
      Defendant                       :

*FILED*
*JUL 26 P 2:49*
*DISTRICT COURT*
*NEW HAVEN, CT*

<u>COMPLAINT</u>

<u>PARTIES</u>

1.     Plaintiff IT Source, LLC ("IT") is a Connecticut Limited Liability

Company with its principal place of business at 242 Ichabod Road, Southbury,

Connecticut.

2.     Defendant Yash Technologies, Inc. ("Yash") is an Illinois Corporation

with its principal place of business at 605 17th Avenue, East Moline, Illinois

<u>JURISDICTION</u>

3.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332, and the

Supplemental Jurisdiction of the United States District Court to entertain claims

arising under State law, as such claims asserted herein derive from a common

nucleus of operative facts.

4.     The amount in controversy exceeds $75,000.00, exclusive of interest and

costs.



**EXHIBIT**

*B*

5.     This Court has personal jurisdiction over Yash pursuant to C.G.S. §33-929, in that Yash entered into a contract made or to be performed in Connecticut, as to which contract IT was a third-party beneficiary.

6.     Venue in this District is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to IT's claim occurred within this Judicial District.

## FACTS

7.     On or about February 3, 2006, Yash entered into a written Agreement ("Agreement") with Prospeed Trading, Inc. ("Prospeed"), a California Corporation having its principal place of business at 2424 Sage Leaf Circle, Corona, California. Prospeed is not a party to this action. At the time of the entering into of this Agreement, IT and Prospeed were engaged in a joint venture with respect to the subject, purpose, and intent of the Agreement. Yash at all relevant times was aware of the relationship between IT and Prospeed. IT actively participated in the negotiation between Yash and Prospeed, including telephonic and personal conferences at which respective representatives of Yash, Prospeed, and IT were present. On at least one occasion, a representative of Yash came to Connecticut to meet with representatives of Prospeed and IT as part of Yash's state desire to renegotiate. IT refused to alter or amend the existing Agreement.

8.    At the time of the entering into of this Agreement, Yash and Prospeed intended that Yash assume a direct obligagation to IT, and that IT be a third party beneficiary of the Agreement. Yash's performance under the Agreement and course of conduct towards IT with respect to the Agreement, benefited IT. By way of example, Yash wired funds directly into IT's Connecticut bank account , for IT's benefit.

9.    The Agreement required, <u>inter alia</u>, that Prospeed facilitate Yash getting business development projects from other companies for the outsourcing of information technology services to Yash's facilities in India.

10.    Pursuant to the Agreement, Prospeed participated in the selection of Yash by Chemtura Corporation ("Chemtura") to assist Chemtura in implementing its information technology strategy in the United States, Europe, Asia, and South America. Upon information and belief, Chemtura is one of the largest publicly traded specialty chemical companies in the United States, and a global producer and marketer of plastic additives.

11.    Under the Agreement, Yash agreed to pay Prospeed "$5.00/man hour" for both offshore services and onsite services invoiced by Yash to Chemtura.

12.    Paragraph 10 of the Agreement, captioned "Mode of Payment" states: "The payment shall be made in favor of Prospeed in the form of Checks, Demand Draft, or Wire Transfers to a <u>designated bank account</u>. The payment shall be made monthly, and immediately upon receipt of payment from the

MOYNAHAN, MINNELLA.    Fax:203-757-9313          Oct 18 2007  16:15          P. 05

Client. Yash will invoice the Client directly and a copy of such invoice will be sent by Yash to Prospeed. (Emphasis added)."

13.     At the time of its entering into the Agreement, Prospeed, pursuant to the terms of the Agreement, designated IT as payee, and IT's Connecticut bank account as depository for payments due to Prospeed from Yash, and Yash, as promisor, intended to (and did) assume a direct obligation to IT as a third-party beneficiary of the Agreement.

14.     IT contacted Yash in the summer and fall of 2006, seeking from Yash past due payments. Yash paid IT $16,952.25 in November 2006. In January, 2007, IT again contacted Yash requesting payment per the Agreement from funds already paid to Yash by Chemtura. Yash assured IT that payment to it would be sent the following day.

15.     Notwithstanding Yash's promise of payment to IT, on or about January 5, 2007, Yash informed IT that it was unable to "finalize the numbers" in order to pay IT. On or about January 10, 2007, in response to another request by IT for payment, Yash stated that it would take "some time" to finalize the numbers so as to permit payment to IT by Yash.

16.     On or about March 9, 2007, Yash for the first time claimed that since November, 2006, it had not been paid by Chemtura, and that such nonpayment was the reason IT had not been paid by Yash. Yash chose not to pay IT until conofronted with Yash invoices to Chemtura that IT was able to obtain from

4

sources other than Yash. Yash has yet to forward one invoice to Prospeed or IT, as required by the Agreement.

17.     IT thereafter determined that, contrary to Yash's statements to IT, as of March 15, 2007, there was presently due and owing to IT from Yash the sum of $89,954.93, from invoices from Yash to Chemtura that had already been paid. IT, on March 15, 2007, made demand upon Yash for payment of that sum prior to March 20, 2007, based upon information obtained by IT, through December 2006.

18.     On or about March 19, 2007, Yash for the first time proposed to IT immediate renegotiation of the Agreement, and Yash either explicitly or impliedly conditioned further payment to IT upon renegotiation of the Agreement to Yash's satisfaction. IT rejected any renegotiation proposal by Yash, stating that IT was "firm on keeping the contract as it is for the rest of the offshore and onsite services". Yash paid IT the sum of $110,000.00 in the hope IT would agree to negotiate the Agreement. The sum paid was less than the amount owed to IT by Yash.

19.     On or about April 5, 2007, Yash proposed reducing the payments due to IT under the Agreement based upon "confusions [sic] on whether there were verbal discussions or rate reduction or not..." Section 8 of the Agreement states that it "can be amended or in any manner modified...only in a written agreement signed by both parties". IT learned from Chemtura that it had paid

5

Yash approximately $800,000.00 for invoices through early 2007. Yash

confirmed the figure but continued to refuse to pay IT, or provide supporting

documentation.

20.      For the period ended December 6, 2006, Yash had been paid by

Chemtura for 33,969.55 hours of services. Yash has continued to invoice and

receive payments from Chemtura to the present.

21.      On or about May 23, 2007, Yash informed IT that Vinod K. Samanthula,

Yash's General Manager, Sales and Marketing, was purportedly not authorized

to execute the Feburary 3, 2006 Agreement on behalf of Yash, and that Yash did

not have to pay IT for past invoices already paid by Chemtura, as required by

the Agreement.

22.      During the period of November 2006 through April 2007, Yash via wire

transfer deposited the aforesaid total of $170,282.57 in the Connecticut bank

account of IT, which sum represents only a portion of the payments due to IT

from Yash pursuant to the Agreement.

23.      During that same period, Yash did not provide IT with copies of Yash

invoices sent directly from Yash to Chemtura, as required by the Agreement.


24.      At present, there is due and owing to IT from Yash under the

Agreement, the approximate sum of $200,000.00 , subject to

confirmation. Yash has failed to pay that sum despite demand for payment having been made.

25.     As a result of Yash's actions as aforesaid, IT has been damaged.

COUNT ONE (BREACH OF CONTRACT)

26.     Paragraphs 1 through 25 of the preceding sections of this Complaint are hereby incorporated by reference and made Paragraphs 1 through 25 of this Count One as if fully set forth herein.

27.     When Yash and IT entered into the Agreement it was their intent as parties to the Agreement that Yash assume a direct obligation to IT, based upon the terms of the Agreement read in the light of the circumstances attending its making, including the motives and purposes of both of the parties.

28.     Yash intended to assume (and did assume) a direct obligation to pay IT fees owed under the contract. IT, as a third-party beneficiary of the Agreement, has standing to sue to enforce its terms and conditions.

29.     Yash has breached its Agreement with Prospeed (to the detriment of IT) by, inter alia, failing to provide invoicing and payment information regarding Chemtura, and by failing to pay IT service charges, as required by the Agreement.

30.     IT, as a third-party beneficiary of the Agreement, has thereby been damaged.

7

<u>COUNT TWO</u> (Breach of Implied Covenant of Good Faith and Fair Dealing)

31.    Paragraph 26 through 30 of Count One are hereby incorporated by reference and made Paragraphs 1 through 28 of this Count Two as fully set forth herein.

32.    By delaying payment to IT because of a claimed lack of "finality" in the numbers, by claiming either nonpayment or payment of lesser amounts from Chemtura when payment had in fact been made, by directly or indirectly using or withholding payment to IT as leverage for renegotiation of the Agreement, by seeking to inject "verbal discussions" into a written and integrated Agreement, and by claiming more than a year after the fact that Yash's General Manager, Sales and Marketing lacked authority to sign the Agreement on Yash's behalf. Yash breached the Agreement's implied covenant of good faith and fair dealing between Yash and third-party beneficiary IT.

33.    As a result of Yash's breach of such implied covenant, IT has been damaged.

WHEREFORE:        Plaintiff claims Judgment against the Defendant for:

A.    Money Damages;

B.    Such other and further relief in law or equity as the Court

    may deem just and proper.

                              PLAINTIFF
                              IT SOURCE, LLC

                              By _Robert L. Keepnews_
                              Robert L. Keepnews
                              CT 06787
                              Moynahan & Minnella, LLC
                              141 East Main Street
                              P.O. Box 2242
                              Waterbury, CT 06722
                              203-573-1411
                              RKeepnews@Moynahanlawfirm.com

## Sush Tripathi

**From:**    Robert Keepnews [rkeepnews@moynahanlawfirm.com]
**Sent:**    Monday, August 06, 2007 3:47 PM
**To:**      Sush Tripathi
**Subject:** Fw: IT Source, LLC v. Yash Technologies, Inc. and Yash Technologies, Inc. v. Prospeed Trading, Inc.

Sush:  The attached is for your information.  I will call Yash's counsel for additional information.  Were you aware that Yash had sued Prospeed in Illinois back in May?

Bob

—— Original Message ——
**From:** James S. Zmuda
**To:** Robert L. Keepnews
**Sent:** Monday, August 06, 2007 3:43 PM
**Subject:** IT Source, LLC v. Yash Technologies, Inc. and Yash Technologies, Inc. v. Prospeed Trading, Inc.

Mr. Keepnews:

I am the attorney for Yash Technologies, Inc. ("Yash").  I telephoned your office this morning and was told you are in meetings this afternoon.  I received your Complaint today by certified mail.

I am attaching a Complaint against Prospeed Trading, Inc. that was filed in May in Rock Island County, Illinois.

Please contact me to discuss these matters.  I look forward to hearing from you.

Regards,

James S. Zmuda
jzmuda@califf.com
CALIFF & HARPER, P.C.
506 15th Street, Suite 600
Moline, Illinois 61265
Telephone:    (309) 764-8361
Facsimile:     (309) 764-8394
Website:       www.califf.com

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any Federal tax advice contained in this communication (including any attachments or schedules) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to any other party any transaction or tax matter addressed herein.

This email (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential and is legally privileged.  This message and its attachments may also be privileged and attorney work product.  They are intended for the individual or entity named above.  If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also please notify the sender by replying to this message, and then delete it from your system.  Thank you.



EXHIBIT
C

9/4/2007

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS

YASH TECHNOLOGIES, INC., an Illinois )
corporation, )
       )
      Plaintiff, )
       )
      vs. )      Case No. _____
       )
PROSPEED TRADING, INC., a California )
corporation, )
       )
      Defendant. )

**07MR285**

FILED in the Circuit Court
ROCK ISLAND
GENERAL
MAY 15 2007

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, YASH TECHNOLOGIES, INC., an Illinois corporation

("YASH"), by and through its attorneys, Califf & Harper, P.C., pursuant to 735 ILCS 5/2-701,

and for its Complaint for Declaratory Judgment against the Defendant, PROSPEED TRADING,

INC., a California corporation ("PROSPEED"), states as follows:

### PARTIES

1.     YASH is an Illinois corporation with a place of business located in Rock Island

County, Illinois.

2.     PROSPEED is a California corporation with an office in Corona, California.

3.     While not a party to this action, a party with knowledge concerning the subject

matter of this declaratory judgment action is Sush Tripathi of IT Source ("Source").

4.     At some time prior to February 3, 2006, upon information and belief, Source

informed a representative of Yash Technologies Private Limited, a corporation organized and

existing under the laws of India ("YASH India"), not YASH, that Source or PROSPEED was

assisting an end client named "Chemtura" in finding an information technology ("IT") company to which Chemtura could outsource work.

<u>FACTS</u>

5.      Upon information and belief SOURCE contacted many potential companies to perform IT services offshore for Chemtura through PROSPEED or directly to Chemtura.

6.      Upon information and belief SOURCE caused to be sent to the potential IT companies referral fee agreements in the name of PROSPEED.

7.      A referral agreement in the name of YASH was received by a representative of Yash India and was signed by such representative, purportedly on behalf of YASH, not YASH India. A copy of such agreement (unsigned) is attached as Exhibit A and incorporated by this reference.

8.      The YASH India representative is not an employee, officer, director, owner or otherwise an authorized agent of YASH.

9.      The YASH India representative had neither express nor implied authority to sign the referral agreement on behalf of or otherwise to bind YASH.

10.     The YASH India representative had no apparent or other authority to sign the referral agreement on behalf of or otherwise to bind YASH.

11.     On or about March 21, 2007 YASH first received a copy of the referral agreement.

12.     A dispute has arisen between YASH and PROSPEED as to whether referral fees are owing to PROSPEED by virtue of the referral agreement and litigation has been threatened against YASH.

2

## DECLARATION OF RIGHTS REQUESTED

13.    YASH therefore seeks a declaration of this Court that YASH is not legally

obligated to make any payments to PROSPEED by virtue of the referral agreement.

WHEREFORE, the Plaintiff, YASH TECHNOLOGIES, INC., an Illinois corporation,

prays for a declaratory judgment finding and ordering that the Plaintiff is not legally obligated to

make any payment to the Defendant, PROSPEED TRADING, INC., a California corporation, by

virtue of the referral agreement, together with an award of Plaintiff's costs incurred in

connection with this action.

YASH TECHNOLOGIES, INC., Plaintiff

By: _____
       James S. Zmuda
For:    Califf & Harper, P.C.


James S. Zmuda
Califf & Harper, P.C.
506 15th Street, Suite 600
Moline, Illinois 61265
Telephone:    (309) 764-8361
Facsimile:    (309) 764-8394

jsz.pldg.3085-3

N THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS

YASH TECHNOLOGIES, INC., an Illinois )
corporation, )
 )
Plaintiff, )
 )
vs. )                    Case No. 07 MR 285
 )
PROSPEED TRADING, INC., a California )
corporation, )
 )
Defendant. )

**FILED** in the CIRCUIT COURT
of ROCK ISLAND COUNTY
GENERAL DIVISION

JUN 2 9 2007

*Lisa L. Bierman*
Clerk of the Circuit Court

<u>ORDER</u>

This cause having come before the Court upon the Motion For Service Upon

Secretary of State of California filed by the Plaintiff, the Court having reviewed the Court

file and being fully advised in the premises, HEREBY FINDS that the Plaintiff's Motion

For Service Upon Secretary of State of California should be and the same hereby is

granted.

The Court HEREBY ORDERS as follows: The Plaintiff, YASH

TECHNOLOGIES, INC., is hereby authorized to effectuate service upon the Defendant

in this case, PROSPEED TRADING, INC., by serving the Secretary of State of

California, or any person employed by the Secretary of State's office in the capacity of

assistant or deputy, and the Plaintiff shall further serve a copy of the Summons and

Complaint by United States Mail to the last know mailing address of the Defendant.

ENTERED: __6/29/07__

_____

jsz.pldg.3260